THE UNITED STATES DISTRICT COURT
for the
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| BIANCA FRANCIS,<br><br>              Plaintiff,<br><br>       v.<br><br>(1)WRH REALTY SERVICES, INC,<br>(2)BAKER'S POND GROUP, LLLP<br><br>              Defendants. | Civil No.<br><br><br>**DEMAND FOR JURY** |

## COMPLAINT

The Plaintiff alleges as follows:

## NATURE OF THE ACTION

1. The Plaintiff brings this action to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Act of 1988, 42 U.S.C §§ 3601-3631. It is brought by the Plaintiff ("Complainant") Bianca Francis pursuant to 42 U.S.C § 3613 (a)(1),(2).

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 28 U.S.C § § 1331, 42 U.S.C § 3613 (A).

2. Venue is proper in this District under 28 U.S.C § 1391(b),(c) because (1) the actions or omissions giving rise to the claims occurred in this District; (2) All Defendants conduct business within this District; (3) The Plaintiff resides in this District.

## THE PARTIES AND PROPERTY

3. Bianca Francis resides in an apartment complex located at 1220 Goldfinch Drive Unit 6, Plant City, FL 33563 ("subject property") a "dwelling" under the Fair Housing Act, 42 U.S.C § 3602(b), at all times relevant to this Complaint. Ms. Francis is the Aggrieved Person and Complainant as defined by the Fair Housing Act 42 U.S.C § 3602 (i),(j), at all times relevant to this complaint.

4. Defendant WRH Realty Services, Inc. is the property management company of the Subject Property at all times relevant to this Complaint.

5. Defendant Bakers Pond Group, LLLP are the property owners of the Subject Property at all times relevant to this Complaint.

## FACTUAL ALLEGATIONS

6. On or about March 22, 2022 shortly after 12:00 AM a tenant-to-tenant
   Harassment incident occurred in which the offending party urinated and spit
   on the Plaintiff's front door step. This is after the offending party had
   previously called the Plaintiff a racial slur around the latter part of February.
   Both actions were unprovoked and police were called after the second
   incident and a report was subsequently filed.

7. The Plaintiff is a Black Haitian-American woman and the offending party is
   a White Caucasian Male.

8. On March 22,2022 at around 5:00 AM Plaintiff sent an email to the
   Defendant(s) detailing the incident(s) in full and requesting that they provide
   a resolution and advised that she was fearful for her and her daughter's
   safety because the offending party's behavior was escalating.

9. On March 22,2022  at about 9:00 AM the Plaintiff physically went to the
   leasing office and spoke with the leasing agent Valarie S. and provided
   details regarding the incident and provided her with the police report number
   that was given to her by the officer. The Plaintiff also told Valarie S. that she

sent an email to the Property Manager Namyr Sepulvelda Velez and was waiting for a response.

10. Valarie S. advised that the Defendant was not in the office yet and she would let her know that I came in and also sent an email.

11. Later that same day the Defendant responded to the email apologizing for the offending party's behavior and asked that the Plaintiff provide the video evidence in addition to the pictures that were included in the initial email.

12. The Plaintiff was unable to send the video via her gmail account as the attachment was too large and utilized her icloud email account to send the video instead.

13. Later that afternoon, The Plaintiff then went to the leasing office to confirm the Defendant(s) received the video and discuss what options were available as she no longer felt safe occupying that particular unit because the offending party's unit was directly across from hers, less than 5 feet or so away, and he could easily plan an attack because he was aware of her schedule and the proximity of the units was too close for comfort.

14. The Defendant(s) advised that she would see about allowing the Plaintiff to move to a different unit and would see about pricing and how much more it would be.

15. The Plaintiff advised that she was more than willing to move to a different unit if it meant that her and her daughter would be safe, however, she felt the rental rate should not increase because that would penalize her unfairly, after the rental rate had already increased with the most recent lease renewal.

16. The Property Manager stated that she understood and would give the Plaintiff a call the next day to see what options were available.

17. On March 24,2022 at about 9:50 AM the Plaintiff received a call from the leasing office. When she answered, it was the leasing agent Valarie inquiring if the Plaintiff had renters insurance.

18. The Plaintiff advised that she did and stated that she uploaded the information into the system but she would send an email with proof of insurance. Valarie checked the insurance system while on the call and stated that she saw that it was uploaded. The Plaintiff advised that she would also send an email as well, which she did.

19. On March 29, 2022 the Plaintiff received an email from the Defendant(s) following up regarding the incident and asking the Plaintiff if she was ok.

20. There was no mention of transferring the Plaintiff to another unit and the. The Plaintiff did not respond to the email as she believed the Defendant(s) had ample time to provide an adequate solution that would allow continued enjoyment of her tenancy.

21. The offending party was still occupying the shared patio space and drinking alcohol which wasn't an issue before the incident of discriminatory harassment, however, became an issue as he was extremely intoxicated when both incidents of harassment occurred and the incidents that occurred thereafter. This left the Plaintiff unable to leave her home when the offending party would occupy the space for hours at a time.

22. The Plaintiff decided that she was going to withhold rent until the Defendant(s) provided her with a solution that was equitable and fair. Prior to this incident the Plaintiff has had a great rental history with only a single rent payment being one day late.

23. On April 6, 2022 the Plaintiff received a Three Day Notice from the Defendant demanding payment of rent.

24. The Plaintiff completed an affidavit of Conditional Acceptance listing various Federal Laws and stated that she would agree to make the payment, provided the Defendant would respond and prove what they have done to assist the Plaintiff and secure her safety. There was also a counterclaim, a cease and desist notice and copies of other correspondence that detail the incident. It was then served by a process server to the Defendant WRH Realty Inc. registered agent.

25. This packet was sent in good faith by the Plaintiff, hoping that it would compel the Defendant(s) to perform and assist the Plaintiff and provide assistance, as requested and as required by Federal Law.

26. On or about April 13, 2022 the Plaintiff received a call and spoke with Defendant's Regional Manager Stephanie Treto.

27. On the call the Plaintiff advised that she prefers to discuss everything in writing and would like for them to respond to the affidavit because the Plaintiff had done everything that she was supposed to do and followed protocol as per the lease agreement and the Defendant has still not provided a solution that would allow the Plaintiff to enjoy her tenancy as she did prior to the incident.

28. Mrs. Treto then alluded to the affidavit being too long so she was advised by their attorney to call the Plaintiff instead.

29. The Plaintiff then asked Mrs.Treto what was the Defendant offering to do about the incident.

30. Mrs. Treto then stated that they were willing to let the Plaintiff out of her lease without any penalties. There was no mention or offer to transfer the Plaintiff to another unit within the property although there were plenty that were available.

31. The Plaintiff stated that this was insufficient, as the Plaintiff felt she had followed protocol and gave them time to fix the issue and being released from the lease instead of being offered another unit at the current rental rate would unfairly penalize her as she would have to incur additional expenses due to the fact that rental rates in Hillsborough County area had increased significantly. As a result of this she would also have to take her daughter out of school right before graduation and move even further away from her extended family because the current market rates in the Hillsborough County area were not financially feasible for her budget.

32. The Plaintiff then told Mrs.Treto that she would have to pursue legal action as the manner is not being handled as promised.

33. Later that day, April 13, 2022, the Plaintiff filed a Fair Housing Complaint as the Plaintiff believed that the Defendant had become vicariously liable, when they failed to take action in assisting the Plaintiff and ending the harassment and the potential for subsequent harassment.

34. On April 14, 2022 the Plaintiff received another Three Day Notice for demand of payment placed on her residence that stated she would have to pay on or by April 20,2022 or that the Defendant(s) would pursue eviction.

35. Later that evening, the Plaintiff noticed that there was an email sent earlier that day from the Property Manager that stated that the Property Manager

sent a lease violation to the offending party on March 23, 2022 and that she felt the Defendant(s) had completed their duties and the Plaintiffs claims were libelous. However, the Plaintiff never shared information publicly or with a third party; it was only shared with the Defendant's corporate office.

36. The Plaintiff was aware that the violation they initially provided to the offending party was a Curable Notice because the offending party was still consuming alcohol in the common space and behaving in a belligerent manner toward the Plaintiff. Also, public records show that there was no active eviction case listed for the offending party although more than 7 days elapsed since the incident.

37. The Plaintiff responded to the email expressing her sentiments about the situation and the lack of assistance she received from the Defendant(s).

38. The Plaintiff advised the Property Manager in the same email that she would make payment via a third party.

39. The Plaintiff was aware that she qualified for the Hillsborough County Emergency Rental Assistance Program (R3) due to a COVID-19 layoff and had previously been using her savings to ensure that the Defendant(s) were always paid on time. However, considering that she would probably have to move in the near future due to the damaged relationship and loss of trust with the Defendant(s); she felt it would be best to work on rebuilding her

savings and utilize assistance from R3 to avoid an eviction on her record so she could secure housing in the future.

40. The Plaintiff completed the R3 application on April 18, 2022 and it was submitted at 8:07 AM that same day with all the required documentation including the Three Day Notice which would expedite the process as the R3 program states in the initial application. The Plaintiff was also sure to include the correct email address for the Property Manager as the R3 program notifies the landlord and/or Property Manager to advise that one of their tenants has completed an application and to request that the Property Manager and/or Landlord upload the ledger so the application can be completed and payment could be sent.

41. On April 19, 2022 at about 2:33 PM R3 sent the Plaintiff an email and asked for her to add the Landlord email and phone number to the portal and requested that this be done before 4:00 PM on April 20, 2022.

42. On April 20,2022 at 2:52 AM the Plaintiff saw the email and immediately uploaded the Property Manager's name, number and email to the portal as she is the party that handles the R3 requests.

43. The Plaintiff was sure to copy and paste the Property Manager's email signature that included all of the necessary information to ensure that there was no margin for error.

44. On April 20, 2022 at 1:56 PM the Plaintiff also emailed the property manager advising that R3 was requesting the rental ledger so they can update the application as paid and send out payment. The Plaintiff included screenshots of the request directly from the R3 portal that showed the Plaintiff provided the correct information and that R3 was requesting the ledger.

45. Although the Property Manager did not respond to the Plaintiff's email. The Plaintiff believed that the Property Manager would respond to R3 and provide the ledger.

46. On April 27, 2022 at 8:54 AM the Plaintiff received an email notification telling her to log-in to the portal. Once the plaintiff logged into the portal, there was a comment from R3 stating that they have been attempting to contact the Property Manager and are still awaiting a response and need to receive the ledger to complete the application and have transferred the application to another department. They also stated that they did not need any additional information from the Plaintiff.

47. On April 27,2022 at 9:08 AM the Plaintiff emailed the Property Manager stating that she received a notification from R3 and that they have been trying to contact her so she can provide the ledger. The email also mentioned that the Plaintiff sent an email on April 20, 2022 requesting the ledger and

reminded the Property manager that she is still a tenant and the property

manager has a duty of care in assisting residents and requested that the

Property Manager respond.

48. After sending the email the Plaintiff also decided to check Public Records

and noticed that an eviction had been filed against her on April 26,2022.

49. At 9:14 AM the Plaintiff called the Leasing office and spoke with Valarie S.

and inquired if Namyr Sepulveda Velez was still the Property Manager as

she had not been receiving responses to her emails. Valarie S. advised that

Ms.Velez was still the leasing manager. The Plaintiff then inquired about an

eviction being filed against her and asked when she would receive a

summons so that she could respond. Valarie then advised that it would come

from the attorney. The Plaintiff thanked Valarie and ended the call.

50. At 9:32 AM Ms.Velez sent the Plaintiff an email stating that they do

participate in the R3 program and the ledger was emailed to the Plaintiffs

case manager on April 22,2022.

51. There are no case managers for the R3 program as it is a Federal program

and not a public assistance program and uses a portal to input and upload

information for approval. You do not submit any information via email, you

only receive email notifications that direct you to the portal to exchange

communication and respond to requests. You are also not assigned a specific

person as a case manager. You can only call customer service and speak with a support specialist.

52. At 12:15 PM the Plaintiff responded to the email inquiring that if the ledger was sent on April 22,2022 why was an eviction filed on April 26, 2022.  The Plaintiff is aware that according to Florida Statute in the Landlord Tenant Act if the Landlord accepts performance then they waive the right to Civil Action. The Plaintiff included screenshots from the portal, with the comment from R3 stating that they tried to contact the Property Manager and also included the Eviction Filing from the Hillsborough County public records site. The Property Manager has not responded to this email.

53. The initial eviction filing from Hillsborough County public records site does not include a dollar amount for the eviction and States that it is Possession Only. It also did not have an attorney attached.

54. On April 29, 2022 at 12:24 PM the Plaintiff decided to call the R3 program and inquire if they have been able to receive the ledger. At 12:25 PM the Plaintiff spoke with a Support Specialist by the name of Selma who had advised that the ledger was uploaded into the system on April 27, 2022. This call occurred on a recorded line as R3 records all calls.

55. Plaintiff is aware that the Property Manager knowingly and intentionally did not provide the ledger to the R3 program as the program has an eviction restriction.

56. The Property Manager waited 9 days from the initial application to provide the ledger to the R3 program. Then only did so when the Plaintiff provided dated proof directly from R3 portal sent on April 27,2022 which further proves that the ledger was not sent on April 22, 2022 as the Property Manager previously alleged.

57. On April 29, 2022 the Plaintiff received an eviction summons on her door at the Subject Property.

58. On April 29, 2022 the Plaintiff also noticed that a notice from the leasing office was placed on the offending party's front door at the subject property. As the offending party's unit is adjacent to the Plaintiff's and notices from the leasing office are marked a specific way. The Plaintiff did not see the contents within the letter.

59. On May 1, 2022 the Plaintiff attempted to login to her Resident Portal and input the credentials that she had been using for the last two years since her tenancy commenced and received a notice that it was an invalid account.

60. The Plaintiff sent a subsequent email to the Property Manager stating that she is unable to use her credentials to log into the account.

61. The Plaintiff decided to attempt to reset the password, when the Plaintiff input her email it reflected that there is "no account associated with this email".

62. The Plaintiff is currently unable to see any of her account information and is also unable to submit maintenance requests via the online portal as the account cannot currently be accessed.

63. As of May 1, 2022, the Plaintiff is still currently a resident of Townsgate Apartments.

64. On May 2, 2022 at 9:33 AM the Plaintiff called the R3 program to inquire about the amount the ledger was reflecting. The Plaintiff was able to speak with a Support Specialist who advised that the ledger was showing that the amount past due was $1194.00 for rent and $266.00 for fees for a total of $1460.00

65. On May 2, 2022 the Plaintiff again decided to attempt to log into her resident portal and received the message that it is an "invalid account", when she attempted to update the password she received a message that "there is no account associated with that email." As of May 2, 2022 the resident is still a resident at Townsgate Apartments.

66. On May 2, 2022 at 9:42 AM the Plaintiff called and spoke with leasing agent, Naisha who advised that she is able to see the Plaintiffs information

on her end. She also confirmed the Plaintiffs email, which was correct.

Naisha did attempt to reset the system and asked the Plaintiff to close her

browser tabs and log-in again, however, the Plaintiff received the same

messages, that it was an invalid account and that there was no email

associated with that account when she attempted to reset the password.


## LEGAL CLAIMS

### Count I: Negligence

67. Plaintiff incorporates by reference the facts alleged in paragraphs 1-67

68. Defendants, WRH Realty Services, Inc. and Baker's Pond Group, LLLP,

    owed the Plaintiff a duty to exercise reasonable care in the safety of

    residents.

69. By failing, for over a month, to respond to a incident of racial

    discrimination and harassment, the Defendant(s) breached this duty of care.

70. The Defendant's negligence exposed the Plaintiff and her daughter to

    subsequent instances of harassment and discrimination which created a

    hostile living environment pursuant to 24 CFR §100.600(2).

71. As a result  of the Defendant's negligence, the Plaintiff suffered from

    anxiety, mental anguish, and fear on a daily basis. The Plaintiff has been

injured, suffered damages and is an "aggrieved person" within the meaning of 42 U.S.C § 3602(i).

## Count II: Discrimination

72. Plaintiff incorporates by reference the facts alleged in paragraphs 1-72.

73. Defendants, WRH Realty Services, Inc. and Baker's Pond Group, LLLP, had the power to take prompt action to correct and end the discrimination and harassment once the Plaintiff made them aware.

74. By failing to use that power once they became aware of the incidents, they became directly liable for a discriminatory housing practice, pursuant to 24 CFR §100.7(a)(1)(iii).

## Count III: Discrimination

75. Plaintiff incorporates by reference the facts alleged in paragraphs 1-75.

76. Defendants,WRH Realty Services, Inc. and Baker's Pond Group, LLLP, refused to make reasonable accommodations in the rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy the dwelling, in violation of 42 U.S.C § 3604(f)(3)(B).

77. As a result of the Defendant's conduct, the Plaintiff has been injured, suffered damages and is an "aggrieved person" within the meaning of 42 U.S.C § 3602(i).

### Count IV: Retaliation

78. Plaintiff incorporates by reference the facts alleged in paragraphs 1-78.

79. Defendants,WRH Realty Services, Inc. and Baker's Pond Group, LLLP and their employees have been uncommunicative and uncooperative by failing to respond to requests sent by the Plaintiff and ignoring multiple emails with requests for information.

80. The Defendant's waited for over a week to assist the Plaintiff with her Emergency rental assistance application, which could have been approved in that time frame, and were dishonest about when and how that information was sent.

81. The defendant was aware that the program had an eviction restriction after it updated to a paid status. The Defendant purposely interfered with the application process, to delay approval, and only uploaded the information to the portal once they had filed for an eviction against the Plaintiff; and only because the Plaintiff provided proof from the Portal that it was not sent on the date the Defendant alleged.

82. The Defendant's actions are maliciously intentional, willful, and taken with reckless disregard to the rights of Ms. Francis and are retaliatory in nature pursuant to 24 CFR § 100.400(4),(5),(6) and a violation of 42.U.S.C § 3617.

83. As a result of the Defendant's conduct, the Plaintiff now has a tarnished rental history which will affect her credit standing and make it extremely difficult to secure housing for her and her daughter in the future. The Plaintiff has been injured, suffered damages and is an "aggrieved person" within the meaning of 42 U.S.C § 3602(i).

**Count V: Retaliation**

84. Plaintiff incorporates by reference the facts alleged in paragraphs 1-84

85. The Defendants, WRH Realty Services, Inc. and Baker's Pond Group, LLLP, have removed the Plaintiff's access to the residential portal, although she is still a resident of Townsgate Apartments.

86. The emails sent to the Defendant have gone unanswered and the Plaintiff is unable to access any information and/or submit maintenance requests via the resident portal.

87. The Defendants are purposely interfering with the Plaintiffs ability to use the resident portal, although she is still a resident. A call to the leasing office shows that the account is reflecting on their side of the system. However, several attempts made by the Plaintiff to sign in to the account reflect that her account is invalid and is not associated with a resident at Townsgate.

88. This has never occurred prior to this and the Plaintiff has used the same log-in credentials for the two years she has been a resident at Townsgate, it

only occurred once the complaints were filed and the Defendant became

aware of the Plaintiff's intent to pursue legal action.

89. The Defendant's actions were maliciously intentional, willful, and

performed with reckless disregard to the rights of Ms. Francis and are

retaliatory in nature pursuant to 24 CFR § 100.400(4),(5),(6) and a violation

of 42.U.S.C § 3617.

90. As a result of the Defendant's conduct, The Plaintiff is not able to use the

resident portal in the same capacity as other residents and has been injured,

suffered damages and is an "aggrieved person" within the meaning of 42

U.S.C § 3602(i).

## <u>PRAYER FOR RELIEF</u>

The Plaintiff respectfully requests that this court:

1. Declare that the Defendants' actions, policies, and practices as alleged herein
were unlawful;

2. Enjoin Defendants, their agents, employees, successors and all other persons in
active concert or participation with any of them from:

i. Refusing to make reasonable accommodations in rules, policies, practices,

or services, when such accommodation may be necessary to afford such

persons equal use and enjoyment of a dwelling.;

ii.  Failing or refusing to take such affirmative steps as may be

necessary to restore, as nearly as practicable, Ms. Francis to the position she

would have been in but for the discriminatory conduct; and

iii. Interfering, coercing, threatening or intimidating with any person in the

exercise or enjoyment of or on account of her having exercised or enjoyed,

any right granted or protected by any applicable section of the Fair Housing

Act.

3. An award for compensatory damages for the Plaintiff for mental anguish and

emotional pain and suffering, in an amount to be determined at trial, pursuant to 42

U.S.C § 3613(a)(2) and;

4. An award for punitive damages in an amount to be determined at trial, pursuant

to 42 U.S.C § 3613(a)(2).

5. The Plaintiff further requests such additional relief as the interest of justice may

require.

Respectfully Submitted,

/s/  *Bianca Francis*

Bianca Francis
1220 Goldfinch Dr. #6
Plant City, FL 33563
Ph: (732)-395-9062
Email:Bianca.Francis1188@gmail.com